UNITED STATES DISTRICT
FOR THE DISTRICT OF NEW HAMPSHIRE

Albert Dec and Jan Smith-Dec,

        Plaintiffs,

V.                              CIVIL ACTION NO: 18-457

UNITED STATES OF AMERICA

        Defendants.

## COMPLAINT

This is a complaint for damages arising from substandard medical care rendered to Al Dec, by the United States of America, by and through its agents, servants or employees, including, but not limited to, Anne Lacey, APRN, Marita Gove, APRN, Katrin Bergeron, M.D., and Kathryn Bonafede, M.D.

### PARTIES AND JURISDICTION

1. The plaintiff, Albert Dec, is a resident of 12 Frances Drive, Deerfield, Rockingham County, New Hampshire.

2. The plaintiff, Jan Smith-Dec, is a resident of 12 Frances Drive, Deerfield, Rockingham County, New Hampshire.

3. Anne Lacey, A.P.R.N., 128 Route 27, Raymond, Rockingham County, New Hampshire, was at all times relevant to this Complaint an A.P.R.N. licensed to practice her profession in the State of New Hampshire, and Nurse Lacey was an agent, servant or employee of the United States of America acting within the scope of her employment.

4. Marita Gove, A.P.R.N., 128 Route 27, Raymond, Rockingham County, New Hampshire, was at all times relevant to this Complaint an A.P.R.N. licensed to practice her profession in the State of New Hampshire, and Nurse Grove was an agent, servant or employee of the United States of America acting within the scope of her employment.

5. Katrin Bergeron, M.D., 128 Route 27, Raymond, Rockingham County, New Hampshire, was at all times relevant to this Complaint a physician licensed to practice her profession in the State of New Hampshire, and Dr. Bergeron was an agent, servant or employee of the United States of America acting within the scope of her employment.

6. Kathryn Bonafede, M.D., 128 Route 27, Raymond, Rockingham County, New Hampshire, was at all times relevant to this Complaint a physician licensed to practice her profession in the State of New Hampshire, and Dr. Bonafede was an agent, servant or employee of the United States of America acting within the scope of her employment.

7. On or about May 30, 2017, the plaintiffs, Albert Dec and Jan Smith-Dec, served a Standard Form 95 Claim for Damages, Injury or Death upon the U.S. Department of Health and Human Services.  A copy of the administrative claim is attached under Exhibit A.

8. The plaintiffs' administrative claims were served on HHS within two years after the claims accrued.

9. The plaintiffs' have complied with all requirements for bringing suit under the Federal Tort Claims Act, 28 U.S.C. §§ 2671 et seq.

10. The negligent acts and omissions complained of herein occurred in New Hampshire.

11. This action is brought under the law of the State of New Hampshire and the Federal Tort Claims Act.

12. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1346(b).

13. This Court has jurisdiction over any state law claims pursuant to 28 U.S.C. 1367, because the wrongful acts and omissions complained of arise out of the same case and controversy.

14. Venue is proper pursuant to 28 U.S.C. § 1402(b), because the wrongful acts and omissions complained of occurred in the District of New Hampshire.

## UNDERLYING FACTUAL ALLEGATIONS

15. In January of 2016, Albert Dec was 60 years old when he was diagnosed with metastatic prostate cancer to the pelvic lymph nodes.

16. As of August 2011, Mr. Dec received his primary care at Lamprey Health Care in Raymond, NH.

17. On or about 8/29/11, Mr. Dec was 56 years old when he presented to Anne Lacey, A.P.R.N. at Lamprey Health Care, 128 Route 27, Raymond, New Hampshire, to have laboratory studies drawn, which included a prostate specific antigen (PSA) draw.  The results of the total PSA yielded 4.6 ng/mL (normal range 0-4.0).

18. On 9/9/11, Anne Lacey, A.P.R.N. reviewed laboratory results at an office visit. Mr. Dec was referred to for a urology consult based on his elevated PSA of 4.6.

19. On 9/23/11, Mr. Dec had a consultation with urologist, Jeffrey Troxell, M.D., at Atlantic Urology Associates in Exeter. On examination, Dr. Troxell noted that the prostate was modestly enlarged and palpably benign. Dr. Troxell discussed with Mr. Dec the "great controversy" surrounding the use of PSA screening, and did not feel that prostate biopsy or other intervention was necessary. Instead, Dr. Troxell recommended a recheck in 3 months with a repeat PSA at that time. Dr. Troxell also discussed the natural history of prostate cancer, and stressed that if a small cancer was present at this point, it would typically take a "decade or so for extraprostatic spread to develop."

20. On 2/17/12, Mr. Dec returned to Anne Lacey, A.P.R.N. at Lamprey Health Care for a routine follow up visit and to check on labs that had been previously performed. A.P.R.N. Lacey did not perform a digital rectal examination of the prostate. A.P.R.N. Lacey noted that Mr. Dec had had an elevated PSA level, and documented that she did not think he had been seen urology as was discussed in September.

21. In her note, A.P.R.N. Lacey made a note to have "TC contact him;" however, she did not contact Mr. Dec., nor did she offer, order and/or perform a PSA draw.

22. On 3/29/13, Mr. Dec returned to Marita Gove, A.P.R.N. at Lamprey Health Care for a routine follow up visit and to check his blood pressure. A.P.R.N. Gove did not perform a genitourinary evaluation, including, but not limited to, a digital rectal examination of the prostate. A.P.R.N. Gove did not offer, order and/or perform a PSA draw.

23. On 6/18/13, Mr. Dec returned to Lamprey Health Care and was seen by Katrin Bergeron, M.D. Dr. Bergeron did not perform a digital rectal examination of the prostate, nor did she offer, order and/or perform a PSA draw.

24. On 1/17/14, Mr. Dec returned to Lamprey Health Care and saw Marita Gove, A.P.R.N. A.P.R.N. Gove did not perform a digital rectal examination of the prostate, nor did she offer, order and/or perform a PSA draw.

25. On 4/15/15, Mr. Dec returned to Lamprey Health Care and saw Kathryn Bonafede, M.D., for complaints of the flu. Dr. Bonafede did not perform a digital rectal examination of the prostate, nor did she offer, order and/or perform a PSA draw

26. On 12/18/15, Mr. Dec presented to Ana Goubert, M.D. for follow up medications and to discuss decreased urination flow x 2 months. Mr. Dec discussed having trouble with his urine, decreased flow, and increased urgency at night with no pain/burning. Dr. Goubert examined Mr. Dec's prostate and found no tenderness, mild enlargement, and no nodules. Dr. Goubert's impression was benign prostatic hypertrophy (BPH), and recommended to check PSA, since the last draw was 4.6 in 2011. The PSA yielded a result of 96.80.

27. On 12/23/15, Mr. Dec presented to Cullen Jumper, M.D. at Atlantic Urology Associates for his elevated PSA of 96.  Dr. Jumper noted Mr. Dec had a history of a PSA of 4.6 in 2011 and never had a prostate biopsy.  Dr. Jumper performed a digital rectal exam and found an enlarged prostate that was approximately 40 grams with a hard left lobe.  Dr. Jumper's recommendation was to proceed with transrectal ultrasound and prostate biopsy.

28. On 1/19/16, Mr. Dec presented to Atlantic Urology Associates for a transrectal ultrasound-guided prostate biopsy.  The pathology revealed Gleason 4+4 adenocarcinoma of the prostate with perineural invasion.

29. On 2/20/16, a CT scan of the abdomen/pelvis found two 5 mm nodular densities at the right lung base, and a nodule posterior to the left side of the prostate abutting the rectum and enlarged lymph nodes.

30. On 2/29/16, a repeat PSA yielded a result of 69.6 ng/mL.

31. On 3/3/16, Mr. Dec presented to Gary Proulx, M.D. for radiation treatment in combination with hormones for his high to very high-risk adenocarcinoma of the prostate, with biopsies involving multiple cores and significant percentages of high-grade disease.  Dr. Proulx discussed the use of external beam radiation treatment in conjunction with hormones.  The plan was to have a few months of neoadjuvant hormones alone, and then start with concurrent radiation and hormone treatment.

32. On 3/14/16, Mr. Dec returned to Atlantic Urology Associates to undergo gold seed placement into the prostate for his metastatic disease to the pelvic lymph nodes.

33. On 3/17/16, Mr. Dec began radiation treatment for his high risk prostate cancer, with significant percentage of cores positive cT1c/T2b, GG=4+4=8.  PSA 96.  His plan for treatment was conformal or IMRT/IGRT EBRT.

34. At all times relevant to this complaint, A.P.R.N. Lacey was an agent, servant or employee of the United States of America, and was acting within the scope of her employment.

35. At all times relevant to this complaint, A.P.R.N. Gove was an agent, servant or employee of the United States of America, and was acting within the scope of her employment.

36. At all times relevant to this complaint, Dr. Bergeron was an agent, servant or employee of the United States of America, and was acting within the scope of her employment.

37. At all times relevant to this complaint, Dr. Bonafede was an agent, servant or employee of the United States of America, and was acting within the scope of her employment.

## Count I.

39. The plaintiff, Albert Dec, repeats and re-avers all the allegations in the Paragraphs above under the headings of Parties, Underlying Factual Allegations, and Counts I through II, as if expressly

rewritten and set forth herein. This action is brought to recover for the conscious pain and suffering and personal injuries of the plaintiff, Albert Dec.

40. At all times relevant to this complaint, the defendant, United States of America, by and through its agents, servants or employees, including, but not limited to, Anne Lacey, APRN, Marita Gove, APRN, Katrin Bergeron, MD, and Kathryn Bonafede, MD, rendered care and treatment to the plaintiff, Albert Dec, at or near 128 Route 27, Raymond, NH.

42. On or about 2/17/2012 through December 2015, the defendant, United States of America, by and through its agents, servants or employees, owed a duty to the plaintiff, Albert Dec, to render care and treatment in accordance with the applicable standards of care.

43. On or about 2/17/2012 through December 2015, the defendant, United States of America, by and through its agents, servants or employees, breached its duty to the plaintiff, Albert Dec, including, but not limited to, when it failed to discuss, offer, recommend, order and/or perform PSA testing; failed to perform physical examinations of the prostate, including a digital rectal exam (DRE); failed to communicate with the plaintiff regarding his prior urology appointment and the urologist's plan; and when it failed to schedule/coordinate a follow up referral to urology for further evaluation.

44. On or about 2/17/2012 through December 2015, average qualified members of the medical profession practicing the defendant's professions knew or should have known of the risks, potential consequences and alternatives to the defendant's choice of treatment of the plaintiff, Albert Dec. On or about 2/17/2012, the defendant, United States of America, by and through its agents, servants or employees, knew or should have known of the risks, potential consequences and alternatives to the defendant's choice of treatment of the plaintiff, Albert Dec.

45. On or about 2/17/2012 through December 2015, the defendant, United States of America, by and through its agents, servants or employees, did not inform the plaintiff, Albert Dec, of the alternatives to and risks and potential consequences of the defendant's choice of treatment of the plaintiff, Albert Dec. If the defendant, United States of America, by and through its agents, servants or employees, had informed the plaintiff of the alternatives to and risks and potential consequences of the defendant's choice of treatment of the plaintiff, Albert Dec, neither Mr. Dec nor a reasonable person in his position would have elected the defendant's choice of treatment. The alternatives to and the risks and potential consequences of the defendant's choice of treatment were material to a decision by Mr. Dec and to a reasonable person in his position as to whether to undergo or forego the defendant's choice of treatment.

46. The injuries sustained by the plaintiff, Albert Dec, were the direct and proximate result of the carelessness, unskillfulness, negligence and improper care and treatment rendered by the defendant, United States of America, by and through its agents, servants or employees, including, but not limited to the following:

   a. Defendant's misrepresentations to the plaintiff that it was knowledgeable, skillful, and competent to diagnose, manage, and treat the plaintiff's medical condition on or about 2/17/2012 through December 2015;

    b. Defendant's failure to render medical care and treatment on or about 2/17/2012 through December 2015 in a knowledgeable, skillful, reasonable, safe, and competent manner;

    c. Defendant's failure to adequately and properly diagnose and treat the plaintiff, Albert Dec's medical condition on or about 2/17/2012 through December 2015 and the defendant's failure to prescribe proper and timely treatment and intervention for said condition;

    d. Defendant's failure to recognize, or have the knowledge to recognize its inability and lack of skill to diagnose and treat the plaintiff, Albert Dec, when the defendant knew or should have known in the exercise of due care, the foreseeable consequences of its inability and failure to properly and skillfully provide the plaintiff, Albert Dec, with acceptable medical and diagnostic services;

    e. Defendant's failure to possess or negligent failure to exercise that degree of skill, training, and care as is possessed and exercised by average qualified members of the nursing profession practicing her specialty;

    f. Defendant's failure to possess or failure to exercise that degree of skill, training, and care that is required to prevent harm to the plaintiff, Albert Dec;

    g. Defendant's failure to discuss, offer, recommend, order and/or perform PSA testing;

    h. Defendant's failure to perform physical examination of the prostate, including a digital rectal exam (DRE);

    i. Defendant's failure to communicate with the plaintiff regarding his prior urology appointment and/or the urologist's plan;

    j. Defendant's failure to schedule/coordinate a follow up referral to urology for further evaluation;

    k. Defendant's failure to inform and failure to warn of the risks involved in or associated with the plaintiff, Albert Dec's, condition, failure to inform and to warn about the treatment of said condition, and failure to inform and disclose to the plaintiff, Albert Dec, the available alternatives to her proposed course of treatment.

47. As a direct and proximate result of the substandard care and treatment rendered to Albert Dec on or about 2/17/2012 through December 2015, and the substantial delay in the diagnosis and treatment, Albert Dec has suffered severe and permanent injuries, his prostate cancer was permitted to grow and spread to the point where it is no longer amenable to cure, and he will, more likely than not, suffer a premature and preventable death from metastatic prostate cancer, and he has incurred and will continue to incur great expense of his medical, surgical and hospital care and treatment.

48. The severe and permanent injuries and damages sustained by Albert Dec, including but not limited to his medical care and related costs and expenses, lost earnings, lost earning capacity, loss of household services, loss of consortium, loss of enjoyment of life, diminished life expectancy, physical and conscious pain and suffering, and other general and special damages, together with interests and costs, were the direct and proximate result of the negligent conduct of the defendant, United States of America, by and through its agents, servants or employees.

WHEREFORE, the plaintiff, Albert Dec, prays judgment against the defendant, United States of America, in an amount which is just and appropriate to compensate the plaintiff, Albert Dec, for his injuries, together with interest and costs.

## Count II.

49. The plaintiff, Jan Smith-Dec, is the wife of Albert Dec, and a person entitled by marriage to the benefit of his full comfort, society, companionship, and consortium.

50. The plaintiff, Jan Smith-Dec, repeats and reavers all of the allegations contained in the Paragraphs above under the headings of Parties and Underlying Factual Allegations and Count I through II, as if expressly rewritten and set forth herein.

51. As the direct and proximate result of the carelessness and negligence of the defendant, United States of America, by and through its agents, servants or employees, the plaintiff, Jan Smith-Dec was caused to suffer and has been severely restricted of the benefit of the comfort, society, companionship, and consortium of her husband, all to her great damage.

WHEREFORE, the plaintiff, Jan Smith-Dec, prays judgment against the defendant, United States of America, in an amount which is just and appropriate to compensate her for her injuries, together with interest and costs.

PLAINTIFFS DEMAND TRIAL BY JURY

Respectfully submitted,
The plaintiffs,
By their attorney,

/s/ Nicholas D. Cappiello
_____
Nicholas D. Cappiello
NH ID#: 17662
LUBIN & MEYER, P.C.
100 City Hall Plaza
Boston, MA 02108
(617) 720-4447